**PAPETTI SAMUELS WEISS MCKIRGAN LLP**
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

**Jared Sutton** (State Bar No. 028887)
Direct Dial: 480.800.3527
Email: jsutton@PSWMlaw.com

**Jennifer Lee-Cota** (State Bar No. 033190)
Direct Dial: 480.800.3528
Email: jleecota@PSWMlaw.com

*Attorneys for Best Western International, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| ADMJM OPI1, LLC, a limited liability company; Douglas Gamble and Amy Gamble, individuals, | |
| Defendants. | |

Plaintiff Best Western International, Inc. ("Best Western"), for its Complaint against ADMJM OP1 LLC, Douglas Gamble, and Amy Gamble, alleges as follows:

## **PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Best Western is a non-profit corporation organized under Arizona law with its headquarters located in Phoenix, Arizona.

2. Upon information and belief, Defendant ADMJM OP1 LLC ("ADMJM") is a Delaware limited liability company with its principal place of business in Harrisonville, Missouri.

3. Upon information and belief, Douglas Gamble ("Gamble") is a resident of Kansas City, Missouri.

4. Upon information and belief, Amy Gamble is Gamble's spouse and is a resident of Kansas City, Missouri. Defendant Amy Gamble is named for community property purposes.

5. Upon information and belief, the only members of ADJMJ are Gamble and

Michael Lawsky. Upon information and belief, Michael Lawsky is a resident of Laguna Beach, California.

6. Defendant ADMJM executed a Best Western Membership Agreement on August 20, 2018 with respect to a hotel located at 4309 Main Street in Kansas City, Missouri (the "Hotel"), pursuant to which, among other things, it agreed that all disputes arising from or related to the membership application process, the membership agreement, or termination of membership would be resolved exclusively in the state or federal courts in Maricopa County, Arizona.

7. Gamble signed the Membership Agreement on behalf of ADMJM as its Manager.

8. Upon executing the Membership Agreement, Defendant ADMJM designated Defendant Gamble as the Voting Member for the membership. As Voting Member, Gamble agreed to be bound by the terms in the Membership Agreement.

9. This Court has jurisdiction over the claims and venue is proper pursuant to 28 U.S.C. §§ 1391 and 1332 because: (1) Best Western is an Arizona non-profit corporation with its principal place of business in Phoenix, and its witnesses are either located in Phoenix or available in Phoenix; (2) Defendants are citizens of Missouri and California; (3) the amount in controversy exceeds $75,000.00; (4) there are no matters pending between the parties in any other jurisdiction; and (5) Defendants executed a contract that contained a forum-selection clause requiring all disputes arising from that contract to be resolved by an state or federal court in Arizona and according to Arizona law.

10. The exercise of personal jurisdiction over Defendants by this Court is proper pursuant to and because, among other reasons, Defendants expressly agreed to litigate all disputes with Best Western arising from or related to the contracts with Best Western, or any relationship between the parties, in state or federal courts located in Maricopa County, Arizona.

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

### GENERAL ALLEGATIONS

11.    Best Western is a hotel-industry, service organization that operates on a cooperative basis by and for its hotelier members, which are independent owners and operators of Best Western® branded hotels.

12.    Best Western provides its members with a license to use its recognized brand name, a reservations system, as well as an option to participate in collective purchasing of hotel equipment, furnishings, and supplies (the "Best Western Services"), among other services that members can elect to purchase.

13.    The rights and obligations of Best Western's members are determined by the member hotels and are set forth in the Membership Agreement, Best Western's Bylaws & Articles (the "Bylaws"), Best Western's Rules and Regulations (the "Rules and Regulations"), Board Policies, and other Best Western "Regulatory Documents," as that term is defined in Best Western's Bylaws (collectively the "Regulatory Documents").

14.    In exchange for receiving Best Western Services, Best Western members are obligated to, among other things, pay annual dues, monthly fees, membership fees, and other assessments/charges, and to abide by all obligations as may be established from time to time in the Regulatory Documents, which are expressly incorporated by reference into the Membership Agreement.  (*See* Ex. A, Membership Agreement ¶ A(1)-(2).)

15.    Annual dues are charged in August of each year.  All other dues, fees, charges, and assessments are billed monthly, and in arrears.

16.    Pursuant to the Membership Agreement and Regulatory Documents, Defendants agreed "to timely pay all fees, dues, charges, and assessment imposed generally on the Membership by the Best Western Board of Directors ('Board') or the Membership, and the cost of all goods and services provided by or ordered through Best Western," that "[p]ast due amounts shall bear interest at the rate of one and one half percent (1.5%) per month from the due date until paid, provided that such interest charge

3

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

shall in no way authorize or excuse late payments or limit Best Western's rights and remedies against Member," and "[a]ny Member may resign from the Membership at any time, but if a Member resigns . . . fees and dues for the remainder of the Initial Term (if still in the Initial Term) or the remainder of any Renewal Term (if beyond the Initial Term) become immediately due and payable." (*See* Ex. A, Membership Agreement ¶ A(2), F(4)(a); Ex. B, Bylaws, Art. II § 5(B).)

17.     The Initial Term of the Membership agreement begins upon activation on "Best Western's reservations system and will end on the last day of Best Western's current fiscal year, which ends on November 30 (Initial Term)."  The Membership Agreement thereafter renews for additional one-year terms "(Renewal Term)."  (*See* Ex. A, Membership Agreement ¶ B).

18.     The Bylaws and Rules and Regulations are expressly incorporated by reference into the Membership Agreement.  (*See id.* at introductory paragraph and ¶ A(1).)

19.     Each Best Western member is authorized to use the trade name, trademarks, service marks, logos, and other intellectual property and similar identifying symbols owned by Best Western (the "Best Western Marks") in connection with its hotel pursuant to a limited, non-exclusive license (the "Best Western License"), which is set forth in the Membership Agreement.  (*See id.* at ¶ C.)

20.     The Best Western License allows the member to use the Best Western Marks in connection with the Hotel, subject to the terms of the Best Western License, and only for the duration of the Best Western membership.  (*Id; see also id.* at ¶ F(1)–(3).)

21.     Best Western first adopted "Best Western" as its trade name in 1947. Shortly thereafter, Best Western adopted and began using "Best Western" as a trademark identifying hotel services provided by member hotels that were affiliated with Best Western.  Best Western has continuously and extensively promoted its trade name and trademark in interstate commerce since 1947.  As a result of this extensive promotion,

1  the trade name and trademark have become famous among consumers as a source-

2  identifying symbol.

3  **DEFENDANTS' BEST WESTERN MEMBERSHIP**

4      22.    Defendant ADMJM executed a Membership Application and Agreement

5  for the Hotel on August 20, 2018.  Gamble executed the Membership Agreement on

6  ADMJM's behalf as its "Manager."  (*See id.* at p. 16.)

7      23.    As the Voting Member, Defendant Gamble agreed to be bound by the

8  Membership Application and Agreement executed in connection with the Hotel.  (*See*

9  *id.*, ¶ J-K, & at Ex. A, Addendum A.)

10      24.    Having accepted that designation, Gamble certified that he understood and

11  agreed to meet Best Western membership requirements, and that he agreed to be

12  personally liable for the responsibilities of the Hotel's Best Western affiliation, including

13  the Membership Agreement and Regulatory Documents.  (*Id.*)

14      25.    Defendants were, and are, jointly bound by the Membership Agreement

15  and Regulatory Documents.  (*Id.*)

16      26.    The Membership Agreement provides that "the Agreement shall terminate

17  . . . upon the Member's default of any obligation to Best Western, as more fully set forth

18  in the Bylaws, Rules and Regulations, and Regulatory Documents, to include, for the

19  avoidance of doubt and without limitation, Member's failure to make timely payment of

20  any fees, dues, assessments, or charges owed Best Western." (*See id.* at ¶ E.)

21      27.    The Bylaws and Rules and Regulations provide that failure to pay dues or

22  other fees or assessments within the time provided is grounds for cancellation.  (*See* Ex.

23  B, Bylaws Article II, Section 8; Ex. C, Rules and Regulations ¶ 1100.5.)

24      28.    The Membership Agreement provides that a default by the Member shall

25  not be deemed a waiver of any rights Best Western may have against a former Member,

26  all of which are reserved. (*See* Ex. A, Membership Agreement ¶ L.)

27      29.    Each month Best Western sent Defendants monthly invoices with respect

28  the membership for the Hotel.  Those invoices included an "aging summary," showing

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

the current balance due, any amounts past due by 30 days, any amounts past due by 60 days, any amounts past due by 90 days, and any amounts past due by 120 days or more. Many charges were billed in arrears for reservation activity that occurred the month before.

30.     Best Western sent Defendants several letters concerning outstanding amounts that Defendants owed with respect to the membership for the Hotel.  (Ex. D, *see, e.g.*, Letters from December 2018, March 2019, May 2019, July 2019, August 2019, October 2019, and November 2019.)

31.     Past due balances were also shown in the "aging summary" of Defendants' monthly statements.  (Ex. E, Monthly Statements for December 1, 2018, March 1, 2019, May 1, 2019, July 1, 2019, August 1, 2019, October 1, 2019, November 1, 2019.)

32.     Defendants failed to pay the fees and charges each month and on July 21, 2020, Defendants agreed to a payment plan agreement to bring the then-outstanding balance of $61,233.44 current.  Defendant Gamble executed the payment plan on July 21, 2020.  (Ex. F, July Payment Plan.)

33.     Defendants failed to pay the amounts owed pursuant to the payment plan. (Ex. G, letters dated May 12, 2021, September 16, 2021, October 13, 2021, November 9, 2021.)

34.     On November 22, 2021, Defendants agreed to a revised payment plan agreement, which superseded the prior payment plan agreement to bring the then-outstanding balance of $121,191.87 current.  Defendant Gamble executed the payment plan on December 2, 2021.  (Ex. H, November Payment Plan.)

35.     Defendants failed to pay the amounts owed pursuant to the payment plan. (Ex. I, *see* April 11, 2022 Letter.)

36.     On May 18, 2022, Defendants sent a request seeking to self-terminate the Membership Agreement, effective June 28, 2022.  (Ex. J, *see* May 8, 2022 D. Gamble.)

37.     At that time, Defendants owed $182,884.40 in pre-termination fees and charges and interest, most of which was well over 120 days past due, as shown on the

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

May 2022 invoice for the Hotel.  (Ex. E, May 2022 Monthly Statement).

38.    On May 26, 2022, Best Western sent Defendants a letter confirming their request to self-terminate.  In the letter, Best Western asked Defendants to "make arrangements to clear the remaining balance owed on your Best Western account as soon as possible," and for payment of charges for fees and dues for the remainder of the fiscal year as specified in Article II, section 5B of the Bylaws (aka liquidated damages or early termination damages).  Best Western also enclosed a "Logo Removal Checklist and Affidavit" and asked that Defendants complete and return it by July 13, 2022. Defendants also cited the liquidated damages provision of the Membership Agreement and the Bylaws.  (Ex. K, May 26, 2022 Letter)

39.    Upon information and belief, the Hotel is currently affiliated with another brand – Wyndham – and is currently operating as the Seville Plaza Hotel, Trademark Collection by Wyndham. *See* https://www.wyndhamhotels.com/trademark/kansas-city-missouri/seville-plaza-hotel-trademark-collection/overview.

## DEFENDANTS HAVE FAILED TO PAY PRE-TERMINATION FEES AS REQUIRED BY THE MEMBERSHIP AGREEMENT

40.    After receiving Best Western's May 26, 2022 letter about the termination and after self-terminating effective June 28, 2022, Defendants did not make arrangements to pay or pay the outstanding sums owed on the Best Western account for the Hotel for pre-termination charges, fees, assessments, and interest or the early termination damages.

41.    Following the termination, Best Western has continued to send Defendants an invoices each month showing the outstanding sums (with interest) owed.  (Ex. E, Monthly Statements July 2022 through December 2023).

42.    On June 29, 2022, Best Western's in-house counsel discussed the outstanding account and early termination damages with Defendant Gamble by phone. Following that conversation, Best Western made an offer to resolve the amounts Defendants owed to Best Western.  Best Western sent its offer in writing over e-mail to

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

Defendant Gamble on June 29, 2022 following their telephone conversation.

43.     On July 5, 2022, Defendant Gamble reached out over e-mail and asked Best Western's in-house counsel if she had time to discuss the offer Best Western had made on June 29, 2022 to resolve the amounts owed. (Ex. L, July 5, 2022 D. Gamble email.)

44.     On July 5, 2022, Best Western's in-house counsel again discussed Defendants' outstanding account and early termination damages with Defendant Gamble by phone.  Best Western made another offer to resolve the amounts owed to Best Western and Defendant Gamble accepted the offer during the call.

45.     After reaching a settlement agreement by phone on July 5, 2022, Best Western's in-house counsel documented the parties' settlement in an e-mail and asked Defendant Gamble to reply to confirm the settlement agreement.

46.     Defendant Gamble replied "Agreed. Thanks Emily! (Ex. M, July 5, 2022 Settlement Agreement).

47.     Pursuant to the parties' settlement agreement, Defendants agreed to pay a total sum of $200,000 and that payments would be made in installments.  The first installment would be $100,000 on August 15, 2022 paid via wire.  The remaining $100,000 would be paid in twelve (12) equal installments of $8,333.33 each month beginning September 1, 2022 and ending August 2023, to be paid by the 15th of each month.  (*Id*.)

48.     To date, Defendants have failed to pay as required by the parties' settlement agreement.

## COUNT I – BREACH OF SETTLEMENT AGREEMENT

49.     Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

50.     The parties' July 5, 2022 settlement is a valid, binding and enforceable contract.

51.     Defendants have refused to and continue to refuse to pay Best Western the

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

1    amounts due and owing as required by the parties' settlement.

2        52.    Best Western fully performed its obligations under the parties' agreement.

3        53.    Defendants' performance under the parties' agreement was not excused.

4        54.    To date, Defendants have failed to pay any amounts, as required by the

5    settlement agreement of $200,000.

6        55.    As of today, the amounts owed for breaching the settlement agreement are

7    $200,000.

8                **COUNT II – BREACH OF MEMBERSHIP AGREEMENT**

9        56.    Best Western incorporates by reference the allegations in the preceding

10   paragraphs as though fully set forth herein.

11       57.    In the alternative, Defendants have also breached the Membership

12   Agreement, which is also a valid, binding and enforceable contract.

13       58.    Defendants have refused to and continue to refuse to pay Best Western the

14   amounts due and owing as required by the Membership Agreement.

15       59.    Best Western fully performed its obligations under the parties' agreement.

16       60.    Defendants' performance under the parties' Membership Agreement was

17   not excused.

18       61.    To date, Defendants have failed to pay as required by the Membership

19   Agreement and Regulatory Documents.  As of December 1, 2022, the amounts for pre-

20   termination services, early termination damages, and interest with a total owed of

21   $216,371.20.

22       62.    Pursuant to the express terms of the Membership Agreement, interest has

23   accrued and continues to accrue on the unpaid amounts at 1.5% per month until paid in

24   full.

25   **COUNT III – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND**
     **FAIR DEALING IN THE SETTLEMENT**
26

27       63.    Best Western incorporates by reference the allegations in the preceding

28   paragraphs as though fully set forth herein.

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

9

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

64. The settlement agreement is a valid, binding, and enforceable contract.

65. The settlement agreement contains an implied covenant of good faith and fair dealing.

66. Defendants' conduct, as described herein, constitutes a breach of the covenant of good faith and fair dealing implied in the contract.

67. As a direct and proximate result of Defendants' misconduct and failure to perform the parties' contract, Best Western has suffered damages of at least $200,000.

**COUNT IV – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IN THE MEMBERSHIP AGREEMENT**

68. Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

69. In the alternative, Defendants have also breached the duty of good faith and fair dealing in the Membership Agreement, which is a valid, binding, and enforceable contract.

70. The agreement contains an implied covenant of good faith and fair dealing.

71. Defendants' conduct, as described herein, constitutes a breach of the covenant of good faith and fair dealing implied in the contract.

72. As a direct and proximate result of Defendants' misconduct and failure to perform the parties' contract, Best Western has suffered damages of at least $216,371.20.

**PRAYER FOR RELIEF**

WHEREFORE, Best Western International, Inc. seeks judgment against Defendants, jointly and severally, as follows:

A. An award to Best Western of its damages in an amount to be proven at trial;

B. Attorneys' fees and costs pursuant to the Membership Agreement, A.R.S. §§ 12-341 and 12-341.01, and any other applicable law;

C. Pre- and post-judgment interest; and

D.     Any other relief the Court deems just and proper.

DATED this 24th day of January, 2023.

PAPETTI SAMUELS WEISS MCKIRGAN LLP

/s/Jennifer Lee-Cota
Jared Sutton
Jennifer Lee-Cota

*Attorneys for Best Western International, Inc.*

11